Filed 4/8/16  P. v. Powers CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PHILLIP RICHARD POWERS et al.,<br><br>        Defendants and Appellants. | B261156<br><br>(Los Angeles County<br>Super. Ct. No. BA409225) |

        APPEAL from the judgments of the Superior Court of Los Angeles County, Craig Richman, Judge.  Affirmed.

        MLG Automotive Law, Jonathan A. Michaels and Kianna C. Parviz, for Defendants and Appellants.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and David A. Voet, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Neil David Campbell introduced his friend, wealthy doctor Gary Michelson, to defendant Phillip Richard Powers.  The three men established a business relationship in 2000 in which Powers secured investment property in Costa Rica for Michelson, for the ostensible purpose of growing and harvesting teak.  The relationship unraveled after several years, with Michelson alleging that Campbell and Powers operated a scheme designed to entice him into purchasing unsuitable land at inflated prices, while secretly overcharging Michelson on the land and siphoning off millions of dollars for their own self-interest.

The district attorney filed a felony complaint charging 140 counts against defendants, which was reduced to five counts by the time of trial.  The jury returned one guilty verdict, of grand theft in count 46 (which was referred to at trial as count 3), in violation of Penal Code section 487, subdivision (a).[1]  The jury made a special finding that the charge in count 46 was filed within the statute of limitations, but the excessive taking allegations under sections 186.11, subdivision (a)(2) and 12022.6, subdivision (a)(4), were not true.  The jury found defendants not guilty of grand theft in the four remaining counts.

Probation was denied as to both defendants.  Powers was sentenced to three years in county jail pursuant to section 1170, subdivision (h), on condition he serve 217 days in county jail with 888 days suspended.  Campbell was sentenced to two years in county jail.  Defendants filed timely notices of appeal.

Jointly represented by one attorney on appeal, defendants raise the following issues:  (1) there is insufficient evidence to support the conviction of grand theft in count 46; (2) there is overwhelming evidence that count 46 is barred by the statute of limitations; (3) the trial court erred in failing to instruct the jury that the prosecution withheld evidence; (4) section 1157 requires the convictions in count 46 be reduced to misdemeanors; (5) pursuant to Proposition 47, the count 46 convictions must be reduced to misdemeanors; and (6) if the convictions are

---

[1] Statutory references are to the Penal Code unless otherwise stated.

reduced to misdemeanors, the convictions are barred by the one-year statute of limitations.

## DISCUSSION

### Sufficiency of the Evidence

Defendants first contend the evidence is insufficient to support the conviction in count 46. Defendants reason that the evidence is constitutionally inadequate because: (1) the prosecution presented inconsistent evidence that Michelson sent $759,600 to Costa Rica to pay for properties obtained by defendants; (2) Michelson testified that he actually received each of the properties in count 46 so there could not have been a theft of $759,600; (3) the prosecution theory that defendants inflated the price of the property before selling it is incorrect because "Michelson himself testified on cross-examination that he did not know how much of the $759,600 was stolen" and "Michelson knew that Powers was taking a commission for his services of acquiring the property, and also knew that Powers was buying the property, marking it up, and selling it;" (4) a professional services agreement between Powers and Michelson did not limit the amount of commission Powers was to earn from each sale, and although Michelson testified that Powers was limited to taking no more than 6 percent, the prosecution presented no document memorializing a 6 percent limit on commission.

We reject the challenge to the sufficiency of the evidence. The inadequate statement of facts presented by defendants in their briefing forfeits the issue on appeal.

#### *Standard of Review and the Requirement of a Complete Statement of Facts*

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—

3

evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Reilly* (1970) 3 Cal.3d 421, 425; accord, *People v. Pensinger* (1991) 52 Cal.3d 1210, 1237.) The same standard applies when the conviction rests primarily on circumstantial evidence. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.) Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. (*Ibid.*)" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.)

"Thus, to prevail on a sufficiency of the evidence argument, the defendant must present his case to us consistently with the substantial evidence standard of review. That is, the defendant must set forth in his opening brief *all* of the material evidence on the disputed elements of the crime in the light most favorable to the People, and then must persuade us that evidence cannot reasonably support the jury's verdict. (See *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282.) If the defendant fails to present us with all the relevant evidence, or fails to present that evidence in the light most favorable to the People, then he cannot carry his burden of showing the evidence was insufficient because support for the jury's verdict may lie in the evidence he ignores." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.)

"An appellant's opening brief must: [¶] . . . [¶] (C) Provide a summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C). "An appellant must fairly set forth all the significant facts, not just those beneficial to the appellant. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 402.)

The record in this case includes eight volumes of reporter's transcripts, five of which contain trial testimony. Fifteen witnesses testified for the prosecution and two for defendants. Approximately 150 exhibits were received at trial.

The statement of facts in defendants' opening brief mentions the name of one witness—alleged victim Gary Michelson—and cites to eight exhibits. The first four paragraphs are devoted to trial testimony and evidence, primarily highlighting evidence favorable to the defense. The final nine paragraphs included in the statement of facts section of the opening brief describe the procedural history of the case with no reference to the evidence presented at trial. Defendants' reply brief fares no better, again failing to address the totality of the evidence from trial in the light most favorable to the prosecution. By way of comparison, the statement of facts in the respondent's brief filed by the Attorney General is 10 pages long.

In an effort to cure the defect in briefing so that the sufficiency of the evidence contention could be reached on the merits, this court solicited additional briefing after oral argument to clarify the evidence pertaining to count 46. We specifically directed the parties to "discuss in detail whether or not the emails that were first adduced at trial during the prosecutor's closing argument, which neither appellants nor respondent discussed in their respective briefs, provide sufficient evidence to support the count 46 convictions."

Defendants' letter brief failed to set forth the contents of the e-mails. Instead, defendants argued that "it is crucial to understand the skepticism with which this extremely prejudicial evidence must be viewed" due to a break in the chain of custody, a meritless issue not presented on appeal nor pertinent to this court's request for specific briefing. Thereafter, defendants' letter brief goes on to describe the e-mails as "disjunctive, unclear, confusing and in no way offer any evidence supporting the Count 46 conviction." Defendants then discuss what the e-mails do not establish, referring to the cost of the properties, what Michelson paid, and the absence of e-mail reference to

any property related to count 46. Thus, defendants failed to discuss the actual contents of the e-mails in the light most favorable to the judgment.

In contrast, the Attorney General responded to the court's request for additional briefing with a summary of the various e-mails she contends demonstrate defendants' fraudulent scheme. Without conducting a comprehensive summary of the entirety of the Attorney General's review of the e-mails, it is sufficient to note that the Attorney General cites to e-mails between defendants that: suggest inflating prices of property by millions of dollars to be sold to Michelson without telling him; discuss destroying original documents; refer to raising the price of properties to Michelson by 35 percent over what they paid; identify funds received from Michelson for properties covered by the charge in count 46; set forth defendants' fear that Michelson would find out Campbell had been receiving more than half of what Powers received on the property sales and they could end up "in a lawsuit right now with [Powers's] bank records open on his desk with possibly both of us in jail, broke, or both"; and discuss the need to hide "about $6M worth of profits and make it look like part of the acquisition costs."

*Analysis*

Based on the above description of the briefing, we have no difficulty concluding defendants have forfeited their claim of insufficiency of the evidence. At no point have defendants set forth all of the material evidence relating to count 46 in the light most favorable to the People. Under these circumstances, defendants have not sustained their burden of showing the evidence was insufficient. (*People v. Sanghera*, *supra*, 139 Cal.App.4th at p. 1574.)

**Statute of Limitations**

Defendants argue that the statute of limitations under section 803, subdivision (c)(1) for grand theft was triggered no later than March 15, 2006, based on Michelson's

6

testimony that he knew "something was very wrong" when he learned for the first time that "[Powers] was taking multiple levels of commissions."  They contend that the felony complaint filed on March 21, 2013, was filed beyond the limitations period. Defendants also argue that the theft alleged in count 46 was completed in 2005 , and Michelson was reasonably suspicious throughout 2005, expressing concern about the transactions and the commissions Powers was receiving, and asking for copies of all purchase agreements and corresponding checks for the first time.  Citing *People v. Zamora* (1976) 18 Cal.3d 538, 561-562, defendants also make the argument that the statute of limitations period began to run in 2005 when Michelson, as a reasonably prudent person, would have been suspicious of fraud.

### *Standard of Review*

"When an issue involving the statute of limitations has been tried, we review the record to determine whether substantial evidence supports the findings of the trier of fact. (*People v. Ruiloba* (2005) 131 Cal.App.4th 674, 681-682; *People v. Padfield* (1982) 136 Cal.App.3d 218, 226.)  Statutes of limitation must be strictly construed in favor of a defendant.  (*People v. Zamora* (1976) 18 Cal.3d 538, 574 (*Zamora*).)  The statute of limitations is not an element of the crime; although the prosecution has the burden of proving the criminal action was commenced within the applicable limitations period, its burden of proof is by a preponderance of the evidence.  (*Id*. at p. 565, fn. 27; *People v. Smith* (2002) 98 Cal.App.4th 1182, 1187.)"  (*People v. Castillo* (2008) 168 Cal.App.4th 364, 369.)

The four-year statute of limitations for grand theft "does not commence to run until the discovery of the offense . . . ."  (§ 803, subd. (c)(1).)  In addition, the statute of limitations is tolled for "a maximum of three years during which the defendant in not within the state . . . ."  (*Id*. at subd. (d).)

The "lack of actual knowledge is not required to bring the 'discovery' provision of [former] section 800 into play.  The crucial determination is whether law enforcement

authorities or the victim had actual notice of circumstances sufficient to make them suspicious of fraud thereby leading them to make inquiries which might have revealed the fraud." (*People v. Zamora*, *supra*, 18 Cal.3d at pp. 571-572, italics omitted.)

It is settled that discovery of loss by a victim is alone insufficient to commence the running of the limitations period. (*People v. Petronella* (2013) 218 Cal.App.4th 945, 956; *People v. Soni* (2005) 134 Cal.App.4th 1510, 1518; *People v. Crossman* (1989) 210 Cal.App.3d 476, 481.) "'For the purposes of triggering the statute of limitations under a similar tolling statute, a discovery was held not to have occurred even though officials learned substantial facts which would have only created a suspicion of wrongdoing. (*Com. v. Hawkins* (1982) 294 Pa.Super 57.) Similarly, in *People v. Swinney* [1975] 46 Cal.App.3d 332, 337, the court concluded the triggering of a period of limitations on concealed thefts requires more than mere discovery of a loss; it requires an awareness the loss occurred *by virtue of a criminal agency.* Thus, "discovery" calls for awareness of the crime, not merely the loss.' (*People v. Kronemyer* (1987) 189 Cal.App.3d 314, 334; italics in original.)" (*People v. Crossman*, *supra*, at p. 481.)


### *Facts Relating to the Statute of Limitations Issue*


Our review of the record reveals the following facts constituting substantial evidence to support the jury's finding.

Michelson's purchases of Costa Rican properties increased in 2005. David Cohen, Michelson's financial advisor, was responsible for obtaining the necessary documentation for Michelson's tax returns. He at first tried to rely on documents provided by Michelson to reconcile purchases and expenses, but the documents were not sufficient,[2] so he turned to Powers for help. Powers wrote to Michelson on November 29, 2005 (Exh. No. 133), with a variety of explanations for why complete documentation was unavailable, including an inability to make copies, family disputes among sellers, and confusing

---

[2] Having difficulty getting information from Powers in Costa Rica was a problem dating back to 2001.

8

payment schedules. He expressed a desire to create a new system to provide "a much clearer and transparent picture of all our transactions in the future" while assuring Michelson that "[t]he most important thing here is to know that all these transactions over the last few years have been done with great diligence . . . ." In 2005, Cohen told Michelson something was very wrong. Michelson then told Powers that Cohen thought something was wrong because they could not get the records. Cohen and Michelson repeatedly asked Powers for documentation at the end of 2005 through 2006. Powers promised the documents, but they were never sufficient.

On March 15, 2006, Powers wrote a letter to Cohen (Exh. No. 41) summarizing property purchases in 2005, and reflecting that Powers received commissions averaging 5.6 percent but varying substantially in percentage among the various properties. This was the first time Michelson learned that Powers was taking multiple levels of commissions. He was concerned with what Powers was doing, but was not suspicious. In a letter to Michelson dated May 18, 2006 (Exh. No. 20), Powers identified additional properties to purchase and indicated he would be requesting funds. He also wrote, "The accounting issue is almost completed, so they tell me, and should be sent out to you next week . . . ."

Michelson went to Costa Rica from March 23-26, 2006, intending to hire another person, Andres Marten, to take over his operations. On March 24 and 25, 2006, Michelson toured the properties that had been purchased, finding them neither lush nor densely planted with trees. Defendants assured Michelson the properties did not look lush because it was the dry season, and that the properties were 70 percent planted with teak trees.

In 2007, Michelson filed a criminal complaint in Costa Rica and a civil action against Powers. Before learning that Campbell had received over $1 million from the transactions, Michelson bought out Campbell's share of the business for $500,000, which was more than its value.

*Analysis*

Substantial evidence supports the jury's finding that count 46 was not barred by the statute of limitations. Contrary to defendants' argument, the statute of limitations period did not commence, as a matter of law, when Michelson learned on March 15, 2006, that Powers was collecting multiple levels of commissions. Michelson testified he was concerned with what Powers was doing, but he specifically testified he was not suspicious. The jury could take into account Michelson's testimony that Powers was actually collecting less than the 6 percent commissions agreed to by the parties, as evidence that a reasonably prudent person in Michelson's position had no reason to suspect criminal wrongdoing. The jury could rationally conclude the concerns expressed by Michelson were a product of communication problems dating back to 2001. Significantly, Powers continued to secure properties for Michelson to purchase, and Powers assured Michelson in his letter dated May 18, 2006, that the accounting issues were almost completed.

We also reject defendants' contention that the statute of limitations was triggered in 2005 when Michelson knew "something was very wrong." Michelson explained that he told Powers that Cohen felt something was wrong with the production of documentation. Michelson never testified that either he, or Cohen, believed the existence of a criminal agency was the root cause of the problem obtaining the documents needed for tax preparation purposes. The jury could rationally conclude that the problem presented amounted to proof of communication issues relating to transactions in a foreign country, rather than the existence of a criminal agency.

Viewed in the light most favorable to the judgment, we hold that a rational trier of fact could find that Michelson was unaware of either a loss or the existence of a criminal agency until he personally observed the state of the purchased land on March 24 and 25, 2006, during his visit to Costa Rica. Defendants have not established a violation of the statute of limitations as a matter of law.

10

**Refusal to Instruct on Withholding of Evidence by the Prosecution**

Defendants argue that the prosecution failed to turn over a computer hard drive seized from Powers in Costa Rica, and that the trial court erred in refusing to instruct the jury on the discovery failure pursuant to CALCRIM No. 306. Defendants argue they had specifically requested disclosure of all evidence pursuant to the discovery provisions of section 1054.1 prior to trial, but the hard drive was not included in the prosecution's discovery. Defendants argue the discovery failure "was extremely concerning" because the prosecutor showed the jury "extremely prejudicial emails allegedly sent between defendants" and there was "no proper chain of custody for the computers that were seized from Powers's home in Costa Rica."

*Penal Code Section 1054.1 and CALCRIM No. 306*

Section 1054.1 provides in pertinent part as follows: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] . . . [¶] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged." The disclosure is to be made at least 30 days prior to trial. (§ 1054.7.) Upon finding a violation of the criminal discovery statutes, the court "may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b).)

CALCRIM No. 306 provides in pertinent as follows: "Both the People and the defense must disclose their evidence to the other side before trial, within the time limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial. [¶] An attorney for the (People/defense) failed to disclose: _____ *<describe evidence that was not disclosed>* [within the legal time period]. [¶] In evaluating the weight and

significance of that evidence, you may consider the effect, if any, of that late disclosure. [¶] [However, the fact that the defendant's attorney failed to disclose evidence [within the legal time period] is not evidence that the defendant committed a crime.] [¶] *<Consider for multiple defendant cases>* [¶] [You must not consider the fact that an attorney for defendant _____ *<insert defendant's name>* failed to disclose evidence when you decide the charges against defendant[s] _____ *<insert names of other defendant[s]>*.]"

*Analysis*

We need not address the merits of this contention, as defendants have failed to establish the prejudice necessary to justify reversal of the judgment. Defendants' opening brief admits the hard drive was seized from Powers's home in Costa Rica. There is nothing in the record to suggest the e-mails presented to the jury do not accurately reflect what was on the hard drive. Although defendants contend there was insufficient proof of chain of custody of the hard drive, on appeal they make no substantive argument on this issue supported by citation of authority.

As noted by the trial court, defendants were aware of the existence of the hard drive and the e-mails from the time of the preliminary hearing, and although a general discovery request for all relevant evidence was made in a timely fashion, defendants never expressly asked for production of the hard drive. Under the circumstances of this case, it is not reasonably probable defendants would have received a more favorable result had the court instructed the jury pursuant to CALCRIM No. 306. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

**Reduction to Misdemeanor Theft under Penal Code Section 1157**

Defendants argues the information alleged a theft in excess of $400, the jury was not instructed under current law that a grand theft is committed by the taking in excess of

$950, the jury returned no verdict finding the amount of the loss in count 46, and pursuant to section 1157, the verdict must be construed to be petty theft. Although defendants are correct the information alleged only a taking in excess of $400 and the jury was not instructed on the dollar amount required for grand theft, we conclude there is no basis to reduce the offense to petty theft under the circumstances of this case.

### Penal Code Section 1157, Related Statutes, and Applicable Case Law

"Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree." (§ 1157.) "Theft is divided into two degrees, the first of which is termed grand theft; the second, petty theft." (§ 486.) "[S]ection 952 states, in part: 'In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another.' It is not required that the charging document specify whether the alleged crime constitutes grand theft or petty theft. (*People v. Anderson* (1961) 55 Cal.2d 655, 657.)" (*People v. Ortega* (1998) 19 Cal.4th 686, 696-697 (*Ortega*).)

### Analysis

The substantive charge in count 46 was grand theft. There was never a suggestion in the trial court that, if defendants were guilty, the crime was anything less than grand theft. The defense position at trial was that defendants were not guilty; they did not contend they were guilty of petty theft.

The trial court read the information to the jury immediately prior to the opening statements of counsel. The jury was told that count 46 alleged that defendants committed grand theft of money exceeding $400, in the amount of $759,600, which was used to

13

purchase Costa Rican parcels 5-85742, 5-29451, 5-34097, and 5-2962. As pled, count 46 involved a charge that was unmistakably grand theft.

The jury convicted defendants of the offense as charged. The verdict form on count 46 stated that the jury found defendants "guilty of the crime of GRAND THEFT OF PERSONAL PROPERTY, in violation of Penal Code Section 487(a), a felony, *as charged in Count 3 of the Information*." (Italics added.) As charged in the information, defendants committed grand theft of $759,600.

It is of no moment that the jury found not true the two excessive taking special allegations alleged as to count 46. The allegation under section 186.11, subdivision (a)(2)—that the taking resulted in a loss of more than $500,000—was not applicable because this enhancement allegation requires commission of two or more felonies, and defendants were only convicted of one felony. The excessive taking allegation under section 12022.6 was also inapplicable, because it alleged a cumulative loss greater than $2.5 million. Here there was no cumulative loss, and the amount of the theft in count 46 was far less than $2.5 million. There was no basis for the jury to find true the second excessive taking allegation.

The trial court's failure to instruct on the $950 loss required for grand theft is harmless beyond a reasonable doubt. (*Neder v. United States* (1999) 527 U.S. 1, 15-16; *People v. Mil* (2012) 53 Cal.4th 400, 413-414.) By finding defendants guilty as charged, the jury necessarily found a taking far in excess of $950. (See *People v. Preciado* (1991) 233 Cal.App.3d 1244, 1247-1248 [jury verdict finding defendant guilty of residential burglary as charged in the information sufficient to fix the offense as burglary in the first degree].) The essence of count 46 was that Michelson would not have wired $759,600 to Powers for the purchase of the properties identified in count 46 had he known defendants were engaged in a scheme to misrepresent the costs and quality of the properties, with the intent of converting substantial portions of Michelson's investments to their own use.

Defendants persistently argue on appeal that the offense in count 46 could amount to no more than a petty theft because Michelson did not ultimately suffer a loss on his investments. From this premise, they contend the jury did not necessarily find a theft of

14

$950 or more. This is incorrect, because loss to the victim is not an element of theft by trick or device. (*People v. Traster* (2003) 111 Cal.App.4th 1377, 1390 ["The elements of theft by trick and device are: '(1) the obtaining of the possession of the property of another by some trick or device; (2) the intent by the person so obtaining possession to convert it to his own use and to permanently deprive the owner of it; and (3) that the owner, although parting with possession to such person, does not intend to transfer his title to that person'"].)

We are satisfied that any error in failing to instruct on the $950 loss required for grand theft was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

**Reduction to a Misdemeanor Pursuant to Proposition 47**

Defendants next argue that pursuant to the ameliorative provisions of Proposition 47, the conviction in count 46 must be reduced to a misdemeanor because there is no proof the value of the property taken exceeded $950. (See § 490.2 [obtaining any property by theft where the value does not exceed $950 shall be treated as a misdemeanor].) We reject the contention. As discussed in the preceding section of this opinion, defendants took property by theft with a value far in excess of $950. Section 490.2 has no application in this case.

**Application of Misdemeanor Statute of Limitations**

Finally, defendants contend that because, in their view, they were convicted of a misdemeanor, the one-year statute of limitations applicable to misdemeanors applies, and the conviction in count 46 is time-barred. We have rejected the contentions that the conviction should be treated as a misdemeanor. As a consequence, the misdemeanor statute of limitations has no application.

**DISPOSITION**

The judgments are affirmed.


                        KRIEGLER, J.


We concur:



                        TURNER, P. J.



                        KUMAR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16